UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IAN DANIELS, *et al.*  CIVIL ACTION

VERSUS  NO. 19-10632

SCOTTSDALE INSURANCE CO.,  SECTION: M (4)
*et al.*

## ORDER & REASONS

Before the Court is a motion by plaintiffs Ian Daniels ("Daniels") and The Brett Daniels 2010 Guarantor Trust (the "Trust") (collectively, "Plaintiffs") for partial summary judgment on insurance coverage,[1] which defendant Scottsdale Insurance Company ("Scottsdale") opposes.[2] Also before the Court is Scottsdale's cross-motion for summary judgment,[3] which Plaintiffs oppose,[4] and in further support of which Scottsdale replies.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court denies both motions on the issue of coverage due to the existence of genuine issues of material fact, but it grants Scottsdale's motion dismissing Plaintiffs' bad faith claims because the factual disputes over coverage demonstrate that Scottsdale's partial denial of Plaintiffs' insurance claim was not arbitrary and capricious.

**I.  BACKGROUND**

This matter concerns a claim made on an insurance policy covering immovable property located at 922 St. Philips Street in the French Quarter neighborhood of New Orleans ("the property"). In 2017, Koi Pond, a corporation managed by Christopher Mitchell, owned the

---

[1] R. Doc. 46.
[2] R. Doc. 53
[3] R. Doc. 50.
[4] R. Doc. 60.
[5] R. Doc. 71.

property and used defendants Risk Placement Services, Inc. and Arthur J. Gallagher Risk Management Services, Inc. (the "AJG Defendants") as its agent to procure insurance for the property.[6]  In 2017 and 2018, Plaintiffs held the mortgage on, and a financial interest in, the property.[7]  In late March and early April of 2018, Daniels contacted the AJG Defendants to procure insurance to protect Plaintiffs' interest in the property against loss caused by structural or property damage, particularly for any acts committed by Koi Pond or its representatives, contractors, or agents, including vandalism, theft, and destruction of property.[8]

On April 3, 2018, Ashley Landry, an insurance agent working for the AJG Defendants, emailed Daniels an insurance proposal that listed Koi Pond as the applicant, owner, and named insured, and Plaintiffs as additional insureds.[9]  Daniels informed Landry that he thought the Trust should be the applicant and that he and the Trust should be the named insureds.[10]  Landry replied that Koi Pond had to be listed as the applicant and named insured because it was the legal owner of the property at the time, and that as the mortgage holders with financial interests in the property, Plaintiffs were listed as additional insureds and loss payees.[11]  After receiving this email, Daniels told Landry to bind the policy.[12]

On April 6, 2018, Scottdale issued a commercial lines insurance policy for the property listing Koi Pond as the named insured and Plaintiffs as the mortgage holders and additional insureds.[13]  Plaintiffs paid the premium and the policy was effective from April 6, 2018, to April 6, 2019.[14]  The policy covered physical loss of, or damage to, the property, including fixtures,

---

[6] R. Doc. 1-1 at 3.
[7] *Id.*
[8] *Id.* at 3-4.
[9] R. Doc. 54-3 at 50.
[10] *Id.*
[11] *Id.* at 48.
[12] *Id.*
[13] R. Doc. 46-6.
[14] R. Doc. 1-1 at 4.

permanently installed machinery and equipment, floor coverings, and appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering.[15] The policy excluded from coverage any loss caused by a "[d]ishonest or criminal act (including theft) by" the insured or any of its "partners, members, officers, managers, employees …, directors, trustees or authorized representatives, whether acting alone on in collusion with each other or with any other party; or theft by any person to whom [the insured] entrust[s] the property for any purpose whether acting alone or in collusion with any other party."[16]

On April 10, 2018, Plaintiffs commenced a suit in Louisiana state court to foreclose on their mortgage and seize the property.[17] Thereafter, on September 1, 2018, Daniels, who was in California, was contacted by either a neighbor of the property or a member of the Vieux Carré Commission to inform him that persons were removing items from the property.[18] Daniels called the New Orleans Police Department to report a theft at the property.[19]

The police report states that on September 1, 2018, at 10:40 a.m., officer John Richard saw a man and a woman moving cabinets out of the property.[20] Richard interviewed the woman who told him that the home was being sold and the previous owner gave her the keys and permission to move his items out.[21] Richard called Daniels and Daniels told Richard that he owned the property, had not changed the locks, and wanted the removed items returned.[22] Richard made the

---

[15] R. Doc. 46-6 at 62.
[16] *Id.* at 84.
[17] R. Doc. 1-1 at 5.
[18] R. Doc. 50-5 at 6-7.
[19] *Id.* at 7-8.
[20] R. Doc. 46-7 at 1.
[21] *Id.*
[22] *Id.*

3

couple return the items to the property.[23]  He then told Daniels to change the locks and obtain eviction notices for unwanted tenants.[24]

Daniels, who lives in California and had never before seen the property, first viewed it sometime after the September 1, 2018 incident, finding it in a state of disrepair.[25]  On September 10, 2018, Daniels contacted Scottsdale to make a claim on the policy.[26]  As proof of the pre-foreclosure state of the property, Daniels provided to Scottsdale undated photographs of an unknown origin that had been used to market the property on AirBnB circa 2016.[27]

On September 19, 2018, Scottsdale's independent adjustor, Donnie Sampson, inspected the property with Daniels.[28]  Sampson observed that a building permit and stop work order were posted on the property.[29]  He concluded that the property was undergoing extensive renovation upon observing that the drywall, flooring, ceilings, and other structural elements were in a state of construction, and that tools, lumber, and other construction items were strewn about the property.[30]  Sampson identified the HVAC units and equipment as having been stolen because the lines to the equipment were cut.[31]  However, Sampson concluded that most of the property did not show signs of vandalism or theft and that many of the allegedly removed or missing items, such as drywall and flooring, would not normally be stolen "during an architectural theft."[32]  Scottsdale ultimately issued a check to Plaintiffs and Koi Pond, jointly, in the amount of $23,083.47 for the loss of the HVAC units/equipment and certain other items missing from the property that had listed for sale

---

[23] *Id.*
[24] *Id.*
[25] R. Doc. 50-5 at 11-14.
[26] *Id.* at 14.
[27] *Id.* at 19.
[28] R. Doc. 50-14 at 1-2.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* at 2.

4

on Craigslist or other online marketplaces.[33] Scottsdale maintained that the other allegedly missing items were not stolen, but rather removed as part of an ongoing renovation project.

Plaintiffs filed this suit in state court on April 3, 2019, alleging that following the foreclosure, Koi Pond and its representatives, including Mitchell, damaged the property by stealing or vandalizing structural components, including "doors, walls, ceilings, cabinets, lights, electrical fixtures, toilets, sinks, mirrors, plumbing fixtures, ceilings, fans, … its foundation, pilings, framing, outer walls, inner walls, plumbing system, slab, interior, floors, subfloors, tiles, walls, and exterior."[34] Plaintiffs allege that Scottsdale breached the insurance contract by failing to pay for all of the alleged damages, and that the adjustment was conducted in bad faith.[35] Plaintiffs further allege that the AJG Defendants were negligent in procuring an insurance policy that did not cover the alleged loss and required Koi Pond to be listed as the named insured.[36] The AJG Defendants subsequently removed the state-court action to this Court alleging diversity subject-matter jurisdiction.[37]

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

[33] R. Doc. 50-5 at 18-19.
[34] R. Doc. 1-1 at 5.
[35] *Id.* at 6-7.
[36] *Id.* at 4 & 7-8.
[37] R. Doc. 1.

5

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual

controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Analysis

#### 1. Coverage

Plaintiffs and Scottsdale filed cross-motions for summary judgment on the issue of coverage for Plaintiffs' losses, including, but not limited to, those allegedly caused by Mitchell and his associates' actions.[38] Plaintiffs argue that the undated AirBnB photographs of unknown origin show that the property was in good condition before the foreclosure and that the photographs from the insurance adjustors' reports show that it was not after the inspection. According to Plaintiffs, this evidence, coupled with certain witness statements, ineluctably lead to the conclusion

---

[38] R. Docs. 46 & 50.

that Mitchell, or someone working for him or Koi Pond, vandalized the property or stole all of the items missing from the property.[39]

Scottsdale, on the other hand, argues that Plaintiffs have not produced any evidence that definitively shows the condition of the property before the alleged theft considering that Daniels never saw it prior to September 2018, nobody knows who took the AirBnB photographs or when, Daniels has no evidence that the property was not being renovated prior to the foreclosure, Mitchell stated in his affidavit that he began renovating the property in 2016 and had not finished at the time of the foreclosure, and Scottsdale's insurance adjustors attribute the missing items to ongoing construction.[40] Scottsdale also argues that the claims are excluded under the policy language to the extent Mitchell, the agent of the insured Koi Pond, is alleged to have been involved in any vandalism or theft.[41]

The record before the Court is rife with disputed issues of material fact regarding what happened to the property, the extent of the alleged loss, and if indeed any items were stolen or vandalized, whether the act was committed by an agent of Koi Pond. These are issues for the trier of fact. Thus, the cross-motions for summary judgment on coverage are DENIED.

**2. Bad Faith**

Scottsdale argues that Plaintiffs' bad faith claims should be dismissed because Scottsdale timely paid the undisputed portion of the claim, Plaintiffs did not submit a satisfactory proof of loss concerning the other allegedly vandalized or stolen items that Scottsdale attributes to unfinished construction, and Scottsdale had legitimate reasons to deny the claim.[42] Plaintiffs, on the other hand, argue that Scottsdale's bad faith is evident because it takes inconsistent positions:

---

[39] R. Docs. 46 & 60.
[40] R. Docs. 50 & 53.
[41] *Id.*
[42] R. Doc. 50-1 at 12-25.

on the one hand, that there was no theft and the ongoing renovation accounts for the property's disarray; and on the other hand, that the loss is excluded from coverage because it was a theft committed by the named insured.[43]

"In order to establish a cause of action for penalties and/or attorney fees and costs under [La. R.S. 22:1892, formerly] La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009). Similarly, La. R.S. 22:1973 authorizes an award of penalties when an insurer's failure to pay a claim within 60 days is "arbitrary, capricious, or without probable cause." La. R.S. 22:1973(B)(5). The prohibited conduct in each statute is virtually identical with the primary difference being a 30- or 60-day period for payment of claims. *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000).

"The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins., Co.*, 857 So. 2d 1012, 1021 (La. 2003)). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). "[W]hen there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021); *see also Kodrin v. State Farm Fire & Cas. Co.*, 314 F.

---

[43] R. Doc. 56 at 8-10.

App'x 671, 679 (5th Cir. 2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.").

Considering what Scottsdale indisputably knew at the time of its adjustment of Plaintiffs' claim, there can be no bad faith on its part. Scottsdale timely paid the undisputed portion of the claim (*i.e.*, the HVAC units/equipment and other items missing from the property that were for sale online). As a proof of loss for the other items, Plaintiffs submitted to Scottsdale undated photographs of an unknown origin and said the photographs accurately represented the state of the property prior to the alleged loss. Yet, Daniels had never personally viewed the property prior to the loss. Sampson, the independent adjustor, inspected the property and saw a work permit, a stop work order, construction materials, and a property that appeared to be in a state of renovation. He concluded that thieves would not normally take drywall, installed tile, or ceilings, and attributed the "damage" to ongoing construction rather than theft. Further, Plaintiffs blamed the insured for the alleged theft. These are the very questions that preclude summary judgment at this juncture in favor of the insured on the issue of coverage. And even were the factfinder to ultimately resolve these questions in favor of coverage, they are not now established, nor could they have been when Scottsdale adjusted the Plaintiffs' insurance claim. Under these circumstances, Scottsdale reasonably questioned the extent of its liability for the claimed loss. Plaintiffs have submitted no evidence that Scottsdale otherwise acted vexatiously in handling the insurance claim, and, thus, Scottsdale cannot be held liable for bad faith penalties. *See Brown v. State Farm Mut. Auto. Ins. Co.*, 93 So. 3d 697, 702 (La. App. 2012) (affirming summary judgment holding that an insurer did not act in bad faith by refusing to "pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss"); *Jones v. Gov't Emps. Ins. Co.*, 220 So. 3d 915, 924 (La. App. 2017) (affirming summary

judgment holding that insurer did not act arbitrarily and capriciously in delaying payout of disputed claim; "It is settled law that when an insurer has a reasonable basis for defending a claim and acts in good-faith reliance on that defense, statutory penalties are inappropriate."); *Bell v. Steckler*, 285 So. 3d 561, 571-72 (La. App. 2019) (affirming summary judgment dismissing bad faith claim against insurer for lack of evidence that there was no valid dispute as to coverage). Therefore, Scottsdale's motion for summary judgment is GRANTED as to Plaintiffs' bad faith claims, which are DISMISSED WITH PREJUDICE.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion against Scottsdale for partial summary judgment on coverage (R. Doc. 46) is DENIED.

IT IS FURTHER ORDERED that Scottsdale's motion for summary judgment on Daniels' claims against it (R. Doc. 50) is DENIED as to the underlying insurance claim, and GRANTED as to Plaintiffs' bad faith claims, which are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 4th day of December, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE