UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IAN DANIELS, *et al.*

VERSUS

SCOTTSDALE INSURANCE CO.
*et al.*

CIVIL ACTION

NO. 19-10632

SECTION: M (4)

**ORDER & REASONS**

Before the Court is a motion *in limine* filed by defendant Scottsdale Insurance Company ("Scottsdale") to exclude testimony of plaintiffs' purported expert insurance adjustor Don Kotter.[1] Plaintiffs Ian Daniels ("Daniels") and The Brett Daniels 2010 Guarantor Trust (the "Trust") (collectively, Plaintiffs) oppose the motion,[2] and Scottsdale replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion in most respects.

**I.   BACKGROUND**

This matter concerns a claim made on an insurance policy covering immovable property located at 922 St. Philips Street in the French Quarter neighborhood of New Orleans ("the property"). In 2017, Koi Pond, a corporation managed by Christopher Mitchell, owned the property and used defendants Risk Placement Services, Inc. and Arthur J. Gallagher Risk Management Services, Inc. (the "AJG Defendants") as its agent to procure insurance for the property.[4] In 2017 and 2018, Plaintiffs held the mortgage on, and a financial interest in, the

---

[1] R. Doc. 51.
[2] R. Doc. 55.
[3] R. Doc. 67.
[4] R. Doc. 1-1 at 3.

property.[5]   In late March and early April of 2018, Daniels contacted the AJG Defendants to procure insurance to protect Plaintiffs' interest in the property against loss caused by structural or property damage, particularly for any acts committed by Koi Pond or its representatives, contractors, or agents, including vandalism, theft, and destruction of property.[6]

On April 3, 2018, Ashley Landry, an insurance agent working for the AJG Defendants, emailed Daniels an insurance proposal that listed Koi Pond as the applicant, owner, and named insured, and Plaintiffs as additional insureds.[7]   Daniels informed Landry that he thought the Trust should be the applicant and that he and the Trust should be the named insureds.[8]   Landry replied that Koi Pond had to be listed as the applicant and named insured because it was the legal owner of the property at the time, and that as the mortgage holders with financial interests in the property, Plaintiffs were listed as additional insureds and loss payees.[9]   After receiving this email, Daniels told Landry to bind the policy.[10]

On April 6, 2018, Scottdale issued a commercial lines insurance policy for the property listing Koi Pond as the named insured and Plaintiffs as the mortgage holders and additional insureds.[11]   Plaintiffs paid the premium and the policy was effective from April 6, 2018, to April 6, 2019.[12]   The policy covered physical loss of, or damage to, the property, including fixtures, permanently installed machinery and equipment, floor coverings, and appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering.[13]   The policy excluded from coverage any loss caused by a "[d]ishonest or criminal act (including theft) by" the insured or any

---

[5] *Id.*
[6] *Id.* at 3-4.
[7] R. Doc. 54-3 at 50.
[8] *Id.*
[9] *Id.* at 48.
[10] *Id.*
[11] R. Doc. 46-6.
[12] R. Doc. 1-1 at 4.
[13] R. Doc. 46-6 at 62.

2

of its "partners, members, officers, managers, employees ..., directors, trustees or authorized representatives, whether acting alone on in collusion with each other or with any other party; or theft by any person to whom [the insured] entrust[s] the property for any purpose whether acting alone or in collusion with any other party."[14]

On April 10, 2018, Plaintiffs commenced a suit in Louisiana state court to foreclose on their mortgage and seize the property.[15] Thereafter, on September 1, 2018, Daniels, who was in California, was contacted either by a neighbor of the property or a member of the Vieux Carré Commission to inform him that persons were removing items from the property.[16] Daniels called the New Orleans Police Department to report a theft at the property.[17]

The police report states that on September 1, 2018, at 10:40 a.m., officer John Richard saw a man and a woman moving cabinets out of the property.[18] Richard interviewed the woman who told him that the home was being sold and the previous owner gave her the keys and permission to move his items out.[19] Richard called Daniels and Daniels told Richard that he owned the property, had not changed the locks, and wanted the removed items returned.[20] Richard made the couple return the items to the property.[21] He then told Daniels to change the locks and obtain eviction notices for unwanted tenants.[22]

Daniels, who lives in California and had never before seen the property, first viewed it sometime after the September 1, 2018 incident, finding it in a state of disrepair.[23] On September

---

[14] *Id.* at 84.
[15] R. Doc. 1-1 at 5.
[16] R. Doc. 50-5 at 6-7.
[17] *Id.* at 7-8.
[18] R. Doc. 46-7 at 1.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] R. Doc. 50-5 at 11-14.

3

10, 2018, Daniels contacted Scottsdale to make a claim on the policy.[24] As proof of the pre-foreclosure state of the property, Daniels provided to Scottsdale undated photographs of an unknown origin that had been used to market the property on AirBnB circa 2016.[25]

On September 19, 2018, Scottsdale's independent adjustor, Donnie Sampson, inspected the property with Daniels.[26] Sampson observed that a building permit and stop work order were posted on the property.[27] He concluded that the property was undergoing extensive renovation upon observing that the drywall, flooring, ceilings, and other structural elements were in a state of construction, and that tools, lumber, and other construction items were strewn about the property.[28] Sampson identified the HVAC units and equipment as having been stolen because the lines to the equipment were cut.[29] However, Sampson concluded that most of the property did not show signs of vandalism or theft and that many of the allegedly removed or missing items, such as drywall and flooring, would not normally be stolen "during an architectural theft."[30] Scottsdale ultimately issued a check to Plaintiffs and Koi Pond, jointly, in the amount of $23,083.47 for the loss of the HVAC units/equipment and certain other items missing from the property that had been listed for sale on Craigslist or other online marketplaces.[31] Scottsdale maintained that the other allegedly missing items were not stolen, but rather removed as part of an ongoing renovation project.

Plaintiffs filed this suit in state court on April 3, 2019, alleging that following the foreclosure, Koi Pond and its representatives, including Mitchell, damaged the property by stealing or destroying structural components, including "doors, walls, ceilings, cabinets, lights, electrical

---

[24] *Id.* at 14.
[25] *Id.* at 19.
[26] R. Doc. 50-14 at 1-2.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 2.
[31] R. Doc. 50-5 at 18-19.

fixtures, toilets, sinks, mirrors, plumbing fixtures, ceilings, fans, … its foundation, pilings, framing, outer walls, inner walls, plumbing system, slab, interior, floors, subfloors, tiles, walls, and exterior."[32] Plaintiffs allege that Scottsdale breached the insurance contract by failing to pay for all of the alleged damages, and that the adjustment was conducted in bad faith.[33] Plaintiffs further allege that the AJG Defendants were negligent in procuring an insurance policy that did not cover the alleged loss and required Koi Pond to be listed as the named insured.[34] The AJG Defendants subsequently removed the state-court action to this Court alleging diversity subject-matter jurisdiction.[35]

## II. PENDING MOTION

Scottsdale seeks to preclude Kotter from testifying at trial, arguing that his testimony would not assist the trier of fact in determining the cause of the loss, which it says is the heart of the dispute.[36] Scottsdale argues that Kotter's opinion that the damage to the property was "caused by others" is evasive and has no clear meaning.[37] According to Scottsdale, damage "caused by others" does not equate to a theft because it could equally mean poor-quality construction.[38] Scottsdale further argues that Kotter does not provide a basis for his opinion that the damage was caused by others, that he does not identify his methodology for arriving at this opinion, and that he relies on the AirBnB photographs which are of an unknown date and origin.[39]

In opposition, Plaintiffs argue that Kotter is qualified to testify as an expert insurance adjustor through his experience and training and that his methodology is reliable.[40] Plaintiffs insist

---

[32] R. Doc. 1-1 at 5.
[33] *Id.* at 6-7.
[34] *Id.* at 4 & 7-8.
[35] R. Doc. 1.
[36] R. Doc. 51-1 at 4-6.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 6-15.
[40] R. Doc. 55.

5

that Kotter's opinion that the damage was caused by others will assist the trier of fact in determining what occurred.[41] Plaintiffs further argue that Scottsdale's issues with Kotter's opinions can be addressed through cross examination.[42]

### III. LAW & ANALYSIS

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the

---

[41] *Id.* at 2-3.
[42] *Id.* at 1.

6

reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 508 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar*

*Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

Scottsdale does not argue that Kotter is unqualified to testify as an expert insurance adjustor. Rather, Scottsdale argues that Kotter's vague statement that the damage was "caused by others" is unhelpful to determining the actual cause of the damage and that his opinions are based on unreliable evidence. After reviewing the record and Kotter's report, the Court finds that Kotter's report is reliable and relevant to the extent of most of the limited opinions it contains. Kotter's opinion that the damage was caused by others is helpful in that it excludes perils not caused by "human interaction" including fire, water, or natural disaster. Kotter also includes a cost estimate of the allegedly damaged or lost items which could be helpful to the trier of fact. Any issues Scottsdale has with these limited opinions can be addressed through cross-examination and the presentation of countervailing expert testimony. However, Kotter's report also includes an opinion that there was a "gross underpayment of the claim" that "resulted in Plaintiffs incurring the cost of litigation." These statements are impermissible legal conclusions or factual determinations reserved for the trier of fact, which Kotter will not be permitted to offer at trial.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Scottsdale's motion to exclude Kotter (R. Doc. 51) is DENIED, except as to excluding testimony amounting to legal conclusions or factual determinations reserved for the trier of fact, including but not limited to opinions that there was a gross underpayment of the claim or that any underpayment resulted in Plaintiffs incurring the cost of litigation.

New Orleans, Louisiana, this 4th day of December, 2020.

                                                BARRY W. ASHE
                                                UNITED STATES DISTRICT JUDGE