UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IAN DANIELS, *et al.* | CIVIL ACTION |
| VERSUS | NO. 19-10632 |
| SCOTTSDALE INSURANCE CO., *et al.* | SECTION: M (4) |

## ORDER & REASONS

Before the Court is a motion by defendants Risk Placement Services, Inc. and Arthur J. Gallagher Risk Management Services, Inc. (the "AJG Defendants") for summary judgment.[1] Plaintiffs Ian Daniels ("Daniels") and The Brett Daniels 2010 Guarantor Trust (the "Trust") (collectively, "Plaintiffs") respond in opposition,[2] and the AJG Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the AJG Defendants' motion, holding that, on the summary-judgment record before the Court, they were not negligent in placing the insurance policy.

## I.   BACKGROUND

This matter concerns a claim made on an insurance policy covering immovable property located at 922 St. Philips Street in the French Quarter neighborhood of New Orleans ("the property"). In 2017, Koi Pond, a corporation managed by Christopher Mitchell, owned the property and used defendants Risk Placement Services, Inc. and Arthur J. Gallagher Risk Management Services, Inc. (the "AJG Defendants") as its agent to procure insurance for the property.[4] In 2017 and 2018, Plaintiffs held the mortgage on, and a financial interest in, the

---

[1] R. Doc. 45.
[2] R. Doc. 54.
[3] R. Doc. 69.
[4] R. Doc. 1-1 at 3.

property.[5] In late March and early April of 2018, Daniels contacted the AJG Defendants to procure insurance to protect Plaintiffs' interest in the property against loss caused by structural or property damage, particularly for any acts committed by Koi Pond or its representatives, contractors, or agents, including vandalism, theft, and destruction of property.[6]

On April 3, 2018, Ashley Landry, an insurance agent working for the AJG Defendants, emailed Daniels an insurance proposal that listed Koi Pond as the applicant, owner, and named insured, and Plaintiffs as additional insureds.[7] Daniels informed Landry that he thought the Trust should be the applicant and that he and the Trust should be the named insureds.[8] Landry replied that Koi Pond had to be listed as the applicant and named insured because it was the legal owner of the property at the time, and that as the mortgage holders with financial interests in the property, Plaintiffs were listed as additional insureds and loss payees.[9] After receiving this email, Daniels told Landry to bind the policy.[10]

On April 6, 2018, Scottsdale Insurance Company ("Scottsdale") issued a commercial lines insurance policy for the property listing Koi Pond as the named insured and Plaintiffs as the mortgage holders and additional insureds.[11] Plaintiffs paid the premium and the policy was effective from April 6, 2018, to April 6, 2019.[12] The policy covered physical loss of, or damage to, the property, including fixtures, permanently installed machinery and equipment, floor coverings, and appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering.[13] The policy excluded from coverage any loss caused by a "[d]ishonest or criminal

---

[5] *Id.*
[6] *Id.* at 3-4.
[7] R. Doc. 54-3 at 50.
[8] *Id.*
[9] *Id.* at 48.
[10] *Id.*
[11] R. Doc. 46-6.
[12] R. Doc. 1-1 at 4.
[13] R. Doc. 46-6 at 62.

act (including theft) by" the insured or any of its "partners, members, officers, managers, employees …, directors, trustees or authorized representatives, whether acting alone on in collusion with each other or with any other party; or theft by any person to whom [the insured] entrust[s] the property for any purpose whether acting alone or in collusion with any other party."[14]

On April 10, 2018, Plaintiffs commenced a suit in Louisiana state court to foreclose on their mortgage and seize the property.[15] Thereafter, on September 1, 2018, Daniels, who was in California, was contacted by either a neighbor of the property or a member of the Vieux Carré Commission to inform him that persons were removing items from the property.[16] Daniels called the New Orleans Police Department to report a theft at the property.[17]

The police report states that on September 1, 2018, at 10:40 a.m., officer John Richard saw a man and a woman moving cabinets out of the property.[18] Richard interviewed the woman who told him that the home was being sold and the previous owner gave her the keys and permission to move his items out.[19] Richard called Daniels and Daniels told Richard that he owned the property, had not changed the locks, and wanted the removed items returned.[20] Richard made the couple return the items to the property.[21] He then told Daniels to change the locks and obtain eviction notices for unwanted tenants.[22]

Daniels, who lives in California and had never before seen the property, first viewed it sometime after the September 1, 2018 incident, finding it in a state of disrepair.[23] On September

---

[14] *Id.* at 84.
[15] R. Doc. 1-1 at 5.
[16] R. Doc. 50-5 at 6-7.
[17] *Id.* at 7-8.
[18] R. Doc. 46-7 at 1.
[19] *Id*.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] R. Doc. 50-5 at 11-14.

3

10, 2018, Daniels contacted Scottsdale to make a claim on the policy.[24]  As proof of the pre-foreclosure state of the property, Daniels provided to Scottsdale undated photographs of an unknown origin that had been used to market the property on AirBnB circa 2016.[25]

On September 19, 2018, Scottsdale's independent adjustor, Donnie Sampson, inspected the property with Daniels.[26]  Sampson observed that a building permit and stop work order were posted on the property.[27]  He concluded that the property was undergoing extensive renovation upon observing that the drywall, flooring, ceilings, and other structural elements were in a state of construction, and that tools, lumber, and other construction items were strewn about the property.[28]  Sampson identified the HVAC units and equipment as having been stolen because the lines to the equipment were cut.[29]  However, Sampson concluded that most of the property did not show signs of vandalism or theft and that many of the allegedly removed or missing items, such as drywall and flooring, would not normally be stolen "during an architectural theft."[30]  Scottsdale ultimately issued a check to Plaintiffs and Koi Pond, jointly, in the amount of $23,083.47 for the loss of the HVAC units/equipment and certain other items missing from the property that had listed for sale on Craigslist or other online marketplaces.[31]  Scottsdale maintained that the other allegedly missing items were not stolen, but rather removed as part of an ongoing renovation project.

Plaintiffs filed this suit in state court on April 3, 2019, alleging that following the foreclosure, Koi Pond and its representatives, including Mitchell, damaged the property by stealing or vandalizing structural components, including "doors, walls, ceilings, cabinets, lights, electrical

---

[24] *Id.* at 14.
[25] *Id.* at 19.
[26] R. Doc. 50-14 at 1-2.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 2.
[31] R. Doc. 50-5 at 18-19.

fixtures, toilets, sinks, mirrors, plumbing fixtures, ceilings, fans, … its foundation, pilings, framing, outer walls, inner walls, plumbing system, slab, interior, floors, subfloors, tiles, walls, and exterior."[32] Plaintiffs allege that Scottsdale breached the insurance contract by failing to pay for all of the alleged damages, and that the adjustment was conducted in bad faith.[33] Plaintiffs further allege that the AJG Defendants were negligent in procuring an insurance policy that did not cover the alleged loss and required Koi Pond to be listed as the named insured.[34] The AJG Defendants subsequently removed the state-court action to this Court alleging diversity subject-matter jurisdiction.[35]

## II.   PENDING MOTION

The AJG Defendants argue that they were not negligent either in procuring the insurance policy in April 2018 or in not changing the name of the insured on the policy until after Plaintiffs foreclosed on their mortgage.[36] With respect to the policy procurement, the AJG Defendants argue that, when Daniels told Landry to bind the policy, Daniels was fully aware that Koi Pond was the named insured and Plaintiffs were additional insured and loss payees.[37] Moreover, say the AJG Defendants, there is no evidence that Daniels told Landry prior to placement of the policy that he was concerned about property losses caused by Koi Pond; indeed, he did not raise such concerns until July 2018, months after the policy was issued.[38]

In opposition, Plaintiffs argue that their claim against the AJG Defendants has nothing to do with changing the named insured on the policy, but rather centers on the policy procurement

---

[32] R. Doc. 1-1 at 5.
[33] *Id.* at 6-7.
[34] *Id.* at 4 & 7-8.
[35] R. Doc. 1.
[36] R. Docs. 45-1 & 69.
[37] R. Doc. 69 at 2.
[38] *Id.* at 3.

that occurred in April 2018.[39]  Plaintiffs argue that the AJG Defendants were negligent in placing a policy that did not protect Plaintiffs against losses caused by Koi Pond.[40]  Plaintiffs claim that they repeatedly told the AJG Defendants that they needed such protection, which the AJG Defendants failed to procure.[41]

## III.  LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a

---

[39] R. Doc. 54 at 6-7.
[40] *Id.* at 7.
[41] *Id.*

rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could

7

support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

    B. Analysis

In Louisiana, "an insurance agent owes a duty of 'reasonable diligence' to [its] customer" which "is fulfilled when the agent procures the insurance requested." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010) (citations omitted). "[A]n insured has a valid claim against the agent when the insured demonstrates that: 1) the insurance agent agreed to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance[;] and 3) the agent acted in such a way that the client could assume he was insured." *Id.* at 356-57 (quotations marks and citation omitted). Accordingly, the insured has the responsibility to request the type and amount of insurance coverage needed, whereas the agent has no "obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." *Id.* at 359.

Based on the summary-judgment record before the Court, Plaintiffs cannot maintain a claim that the AJG Defendants breached their duty to procure the insurance requested. The record establishes that Daniels requested that Landry obtain a commercial general lines policy for the property, which is exactly what she did.[42] Prior to the policy placement, Landry sent a copy of the proposed policy to Daniels, and Daniels responded to Landry that he was concerned about Koi Pond being listed as the insured rather than Plaintiffs.[43] Landry explained that Koi Pond had to be listed as the insured because it owned the property and, as the mortgage holders, Plaintiffs would

---

[42] R. Doc. 54-3 at 48-51.
[43] *Id.*

8

be named as additional insured and loss payees.[44]  Two days after receiving this information, Daniels told Landry to bind the policy.[45]  There is no evidence that Daniels expressed to Landry before July 2018 – and hence, no evidence prior to policy procurement – any concern that the policy might not cover damages caused by an insured.[46]  It is not enough that Plaintiffs make such assertions in their memorandum in opposition to the AJG Defendants' motion for summary judgment.  Under Louisiana law, an insured is deemed to have knowledge of the contents of its insurance policy and any exclusions limiting potential coverage.  *Isidore Newman*, 42 So. 3d at 359.  The insured is obligated to read and review the policy upon receipt "to make certain [its] needs are met." *Id.* at 358.  Thus, when the AJG Defendants placed the policy Daniels was aware that Koi Pond was a named insured and that the policy might exclude losses caused by an insured.  As such, there is no evidence that Landry did anything that would have led Daniels to reasonably believe that the policy provided coverage for the acts of Koi Pond he now contends should have been covered.  Therefore, there is no evidence that the AGJ defendants were negligent in procuring the policy.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED the AJG Defendants' motion for summary judgment (R. Doc. 45) is GRANTED, and Plaintiffs' claims against them are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 7th day of December, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[44] *Id.*
[45] *Id.*
[46] R. Doc. 69 at 2-3 (citing R. Doc. 54-3 at 53).